UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07CR48 RWS |
| | ) | (FRB) |
| JOHN FOWLER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed a Motion to Suppress Statements (Docket No. 22). Testimony and evidence was heard on the defendant's motion on August 30, 2007. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

Finding of Fact

On September 28, 2006, a 911 emergency call was received by the Scott City, Missouri, Police Department, reporting a domestic assault in progress at 1300 West Mar Elm, Lot 15, in Scott City. The caller reported that a weapon was involved. This information was relayed by radio dispatch to officers on patrol in the area.

Officers Joseph Hann and Casey Dodd of the Scott City Police Department responded to the dispatch and went to the West Mar Elm address which is a trailer park located in Scott City. Upon arriving in the area Officer Hann was flagged down by Margie Fowler with whom he was familiar from previous contacts. Margie's daughter Alex Fowler was also present. Margie Fowler reported to Officer Hann that she had been assaulted by John Fowler. Officer Hann was familiar with John Fowler also from previous encounters. Officer Hann testified that John and Margie Fowler were related, although he did not state what the specific relationship is. Officer Hann noticed that Margie Fowler had red marks on her neck and that her eyes were red. Margie Fowler told Officer Hann that John Fowler was inside the nearby residence and that John Fowler had a gun.

Officers Hann and Dodd then approached the residence. Officer Hann could see into the residence through a doorway and saw that John Fowler and his father Albert Fowler, were sitting at a kitchen table. Officers Hamm and Dodd then went into the residence and asked John Fowler to step outside of the residence with them. Officer Hann wanted to speak to John Fowler outside because the lighting was dim inside the residence and there were several knives near the kitchen table where the Fowlers were seated. John Fowler at first refused to do so. Officer Hann told John Fowler that if he did not voluntarily step outside they would forcibly remove him

from the residence. John Fowler then went out to the porch of the residence with the officers.

Because he was concerned that John Fowler might be armed Officer Hann conducted a pat down search of John Fowler. In doing so he felt and then found a glass pipe in John Fowler's pocket. The pipe had residue on it. Officer Hann then placed John Fowler under arrest for possession of the glass pipe and placed him in handcuffs. Hann then advised John Fowler of his <u>Miranda</u> rights, and specifically that he had the right to remain silent; that anything he said could be used against him; that he had the right to an attorney and to have the attorney present during questioning if he wished; and that if he could not afford an attorney one would be appointed for him before questioning if he wished. Officer Hann read these rights to John Fowler from a printed card. After so advising him Officer Hann asked John Fowler if he understood these rights and John Fowler said that he did. John Fowler also agreed to answer questions. In response to questions put to him by Officer Hann, John Fowler said that the glass pipe found in his pocket was used by him to smoke crack cocaine. As Officer Hann spoke to him, John Fowler appeared to be short of breath. The Officer was also able to smell the odor of alcohol on John Fowler and he appeared to be somewhat under the influence of alcohol but not "drunk." The answers he gave to the Officer's questions were responsive and coherent. Officer Hann then placed John Fowler into a police squad car.

Officer Hann then obtained further information from both Margie and Alex Fowler. Margie Fowler told Officer Hann that earlier in the day John Fowler had asked for a ride to Joe Smith's Bar in Commerce, Missouri. An argument ensued which escalated into the ensuing assault in which she was choked by John Fowler. Alex Fowler told Officer Hann that earlier in the day John Fowler had placed some bags into her car. She looked inside the bags and saw two guns. She took the guns from the car and hid them inside the residence so that John Fowler would not have access to them. Both Margie and Alex Fowler told Officer Hann that they did not want the weapons inside the residence and asked Officer Hann to seize and remove the guns. Alex Fowler then accompanied Officer Hann into the residence and showed him where she had hidden the firearms. Officer Hann then seized the guns namely a .22 caliber pistol and a .38 caliber pistol. Both were found to be loaded.

John Fowler was transported to the Scott City Jail for booking. At the jail Officer Hann again spoke with John Fowler. This interview occurred about one hour after the arrest of John Fowler. Officer Hann did not re-advise John Fowler of the <u>Miranda</u> rights prior to questioning him. Officer Hann questioned John Fowler about the guns that had been found in the residence. John Fowler said that he had obtained the guns from a relative and that he had cleaned them and handled them. John Fowler then told Officer Hann that he did not want to answer any further questions and the interview terminated.

Discussion

As grounds to suppress the statements made by him to law enforcement officials on September 28, 2006, the defendant asserts in his motion that the statements "were involuntary, were elicited by coercion, and/or were elicited without the Defendant being fully advised of and afforded his rights under the Fifth Amendment of the United States Constitution, and said statements are therefore involuntary and inadmissible." He also asserts that the statements "were elicited as a result of an unlawful arrest and are therefore inadmissible."

The defendant claims that his arrest was unlawful. Beyond this mere assertion he does not otherwise set out the basis for the claim.

The arrest of defendant John Fowler was lawful, although made without a warrant, because made with upon probable cause. United States v. Watson, 423 U.S. 411 (1976); Gerstein v. Pugh, 420 U.S. 103 (1975). Probable cause for an arrest exists when officers making an arrest have facts and circumstances within their knowledge sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Police are not required to have enough evidence to justify a conviction in order to make a warrantless arrest. United States v.

Caves, 890 F.2d 87, 93 (8th Cir. 1989).  Based on their law enforcement training and experience police officers may draw reasonable inferences of criminal activity from circumstances which might seem merely innocuous to others not so trained and experienced.  United States v. Wajda, 810 F.2d 754, 758 (8th Cir. 1987).

In this case, when Officer Hann arrived on the scene in response to the 911 call, Margie Fowler reported to him that John Fowler had assaulted and choked her.  Officer Hann could see red marks on Margie Fowler's neck consistent with her claim.  Officer Hann knew that Margie and John Fowler were related.  Missouri law provides that it is a Class C felony to attempt to cause physical injury to a family member by choking or strangulation.  See R.S.Mo. § 565.073.1(1).  A "family member" is defined as someone related by blood or marriage.  See R.S.Mo. § 455.010.  Thus Officer Hann had probable cause to believe that John Fowler had committed a felony offense.  Further, when Officer Hann conducted a pat down search of the person of John Fowler he found and seized a glass pipe with residue on it consistent with drug use.[1]  Missouri law provides that it is a Class A Misdemeanor to possess such drug paraphernalia.  See R.S.Mo. § 195.233.  This provided additional probable cause for the arrest of John Fowler.  The defendant's claim that his arrest was unlawful is without merit.

---

[1] The defendant has made no claim that this search and seizure was unlawful.

The defendant asserts in his motion that the statements which he made to Officer Hann were elicited without his being advised of his rights under the Fifth Amendment of the United States Constitution. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. <u>Id.</u> at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the persons at trial. <u>Id.</u> at 479.

In this case, after placing the defendant under arrest Officer Hann specifically advised the defendant of his rights in accordance with <u>Miranda</u>. Officer Hann's credible testimony was that after being so advised the defendant stated that he understood these rights and was willing to answer questions. These circumstances demonstrate a voluntary, knowing and intelligent waiver of these rights. <u>North Carolina v. Butler</u>, 441 U.S. 369, 375-76 (1979); <u>United States v. Ingram</u>, 839 F.2d 1327, 1329 (8th Cir. 1988). Further, the waiver was valid even though the defendant may have consumed alcohol at some time prior. Officer

Hann's credible testimony was that although he could smell the odor of alcohol on the defendant, the defendant did not appear to be "drunk" and that he gave coherent and responsive answers to questions. United States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004); Claggett v. Angelone, 209 F.3d 370, 382 (4th Cir. 2000). The valid waiver continued and carried over to the interview at the police station approximately one hour after the defendant's arrest even though Officer Hann did not at that time re-advise the defendant of his rights. United States v. Boyd, 180 F.3d 967, 976 (8th Cir. 1999); United States v. Calhoun, 49 F.3d 231, 235-36 (6th Cir. 1995).

As to the defendant's claim that the statements were elicited by coercion and were not voluntary, there is no evidence before the court that any threats, promises, force or any other form of coercion was used by the officers to induce the defendant either to waive his Miranda rights or to make any statements. Therefore, both the waiver and statements were voluntary. Colorado v. Connelly, 479 U.S. 157 (1986).

## Conclusion

For all of the foregoing reasons the defendant's Motion To Suppress Statements should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion To Suppress Statements (Docket No. 22) be denied.

The parties are advised that they have until **October 1, 2007,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2007.